**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

THEODORE R. SCOTT,

        Plaintiff,

    v.

SCHINDLER ELEVATOR
CORPORATION, DAVE DURANT,
KYLE RAINWATER, JOE ZEILMAN,
JOHN & JANE DOES 1-10, and
ABC & XYZ CORPORATIONS,

        Defendants.

Civil No. 17-2869 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

MARCIA Y. PHILLIPS
MARCIA Y. PHILLIPS, ESQ. LLM & ASSOC.
PO BOX 625
MOORESTOWN, NJ 08057
1900 MARKET STREET, SUITE 800
PHILADELPHIA, PA 19103

    *Attorney for Plaintiff Theodore R. Scott.*

GREGORY T. ALVAREZ
ROBERT J. CINO
JACKSON LEWIS P.C.
220 HEADQUARTERS PLAZA
EAST TOWER, 7TH FLOOR
MORRISTOWN, NJ 07960-6844

TIMOTHY MICHAEL MCCARTHY
JACKSON LEWIS P.C.
1601 CHERRY STREET
SUITE 1350
PHILADELPHIA, PA 19102

    *Attorneys for Defendants Schindler Elevator Corporation,*
*Dave Durant, Kyle Rainwater, and Joe Zeilman.*

**HILLMAN**, District Judge

This case concerns various federal and state employment discrimination claims, as well as state common law claims, relating to the termination of Plaintiff's employment with Defendants. Currently before the Court is Defendants' Motion to Dismiss the Second Amended Complaint ("Motion to Dismiss") and Plaintiff's opposition, as well as various letters relating to a release allegedly signed by Plaintiff. Also before the Court is Defendants' Motion to Seal and Plaintiff's request for leave to amend and to strike. For the reasons that follow, this Court will grant Defendants' Motion to Dismiss, in part, and deny it, in part; grant, in part, and deny, in part, Defendants' Motion to Seal; deny, without prejudice, Plaintiff's requests to strike and for leave to amend.

## BACKGROUND

This Court takes its facts from Plaintiff's Second Amended Complaint ("SAC"). Plaintiff is Theodore R. Scott, an African-American over the age of forty who was an employee of Defendant Schindler Elevator Corporation ("Schindler") for over twenty-two years. Defendants Dave Durant, a superintendent, Kyle Rainwater, a district manager, and Joe Zeilman, a district service manager (collectively, "Individual Defendants"), were also involved in Plaintiff's employment at Schindler.

In 1989, Plaintiff was hired by Defendant Schindler to work as an elevator mechanic. During that time, it appears that Plaintiff worked in New Jersey. In 2011, Defendant Schindler is alleged to have laid off Plaintiff due to lack of work. Thereafter, Plaintiff filed a civil rights complaint against Defendant Schindler before the New Jersey Department of Civil Rights ("NJDCR"). Plaintiff claimed that he was not laid off due to lack of work, but due to discrimination on the basis of his race and age. Those claims, according to Plaintiff, were settled. (Pl.'s SAC ¶ 33.) After settling the claims, Defendant Schindler rehired Plaintiff. Plaintiff "work[ed] briefly in New Jersey." (Pl.'s SAC ¶ 9.) Then, according to Plaintiff, he was transferred to "The Mellon Bank Center building located at 1735 market Street, Philadelphia Pennsylvania." (Pl.'s SAC ¶ 10.) He worked there for eighteen months before he was terminated.

The events giving rise to the current claims center around two areas: access to a company vehicle and access to water.[1] Plaintiff was informed at some point during his time with Defendant Schindler that he was eligible to apply for a company

---

[1] It is unclear, but Plaintiff may also claim that his assignment to Philadelphia was discriminatory. Philadelphia, to Plaintiff, was inconvenient, did not pay as well, and restricted his opportunities to attend service calls because he was denied a company vehicle (discussed infra).

van, which was used to transport specialized tools and supplies to worksites. Notably, in Pennsylvania, union rules required elevator mechanics to use a company vehicle to transport this equipment. A company vehicle was not required in New Jersey. A company vehicle was coveted by mechanics because it represented an opportunity for increased earnings. Plaintiff requested a company vehicle, but was denied. Plaintiff claims he was the only person of his seniority without one (who had requested one) and that those who had company vehicles were (1) white and (2) sometimes with less seniority than Plaintiff.

As for access to water, when Plaintiff started work in Philadelphia the building contained water fountains. But, these were removed by building management and a water cooler was placed in Defendant Schindler's onsite office. Although Defendant Schindler provided the water cooler, it did not provide any water. Without water, Plaintiff asked a building employee where he could get a water jug. The employee led Plaintiff to believe he could take water jugs from a storage area in the building. Plaintiff took those water jugs and used them – and so did other onsite Schindler employees. Plaintiff estimates this occurred between one and five times.

On May 29, 2014, Plaintiff was told to report to Defendant Schindler's main office in Moorestown, New Jersey. When he arrived, he was confronted by Individual Defendants and he was

told that he had been seen stealing water jugs.  Plaintiff

admitted he had replaced a water jug in the manner indicated

supra, and it was only then that he realized the water jugs were

not for him to take.  Plaintiff offered to pay for the water

jugs.  Without further investigation, Defendant Schindler fired

Plaintiff, reasoning that Plaintiff's comments, supra, were an

admission of theft and that theft violated its zero-tolerance

policy.  Plaintiff alleges that he was treated differently than

those who were not African-Americans and that, in doing so,

Defendant Schindler did not follow its progressive discipline

policy.  Those individuals were given warnings or transferred,

but rarely fired.

Thereafter, Plaintiff filed discrimination charges before

the NJDCR and the Equal Employment Opportunity Commission

("EEOC") on July 16, 2014.  After 250 days of investigation,

Plaintiff withdrew all claims on March 23, 2015.  Defendant

Schindler allegedly appeared in the administrative action and

fully participated.  Plaintiff received a notice of his right to

sue from NJDCR, but never received – and has never received – a

notice of a right to sue from the EEOC.  Plaintiff "was told by

the Director of NJDCR that it would not be forthcoming from the

EEOC agency because the later [sic] did not investigate the

claim."  (Pl.'s SAC ¶ 25.)

In May 2016, Plaintiff initially filed a complaint in the New Jersey Superior Court, Law Division, Camden County which was dismissed. It was reinstated on April 6, 2017. Defendant Schindler removed the renewed case to this Court on April 26, 2017. Defendant Schindler answered this complaint on May 16, 2017. Discovery began. Plaintiff moved for leave to amend on December 15, 2017. After full briefing, Magistrate Judge Karen M. Williams granted in part and denied in part Plaintiff's first Motion for Leave to Amend on May 23, 2018. Plaintiff filed a second Motion for Leave to Amend on June 29, 2018 and Plaintiff filed his First Amended Complaint on June 30, 2018. Defendant Schindler filed its Motion to Dismiss Plaintiff's First Amended Complaint on July 30, 2018.

Thereafter, Judge Williams granted Plaintiff's second Motion for Leave to Amend on August 13, 2018. Plaintiff filed his SAC on August 20, 2018. The SAC contains seven counts: (1) for retaliation under federal and state discrimination laws and the federal and New Jersey constitutions; (2) for creation of a hostile work environment and retaliation (the basis in law is unclear); (3) for discrimination against Plaintiff on the basis of age under the Age Discrimination in Employment Act ("ADEA"); (4) for wrongful termination (the basis in law is unclear); (5) for racial discrimination, under the New Jersey Law Against Discrimination ("NJLAD") and federal and state constitutions;

(6) for New Jersey common law breach of contract; and (7)
"wrongful discharge as a result of negligent investigation" (the
basis in law is unclear).

It is the SAC which is the subject of Defendants' (here
including both Defendant Schindler and Individual Defendants)
Motion to Dismiss presently before the Court, and filed on
September 7, 2018. Plaintiff opposed Defendants' Motion to
Dismiss. Defendants filed a reply on October 9, 2018, under
seal. Attached to that reply is a document entitled "Negotiated
Settlement Agreement and General Release" (the "Release"), which
was purportedly signed by the parties in June 2012 and concerns
the first charge of discrimination brought by Plaintiff after he
was laid off in 2011. It is this document that is the subject
of Defendants' Motion to Seal, filed on October 23, 2018,
Plaintiff's November 3, 2018 letter requesting the Court to
strike this document from the record, and various other letters
filed by both parties. As all of these matters have been fully
briefed by the parties, they are ripe for adjudication.

## ANALYSIS

### A.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction over the case
pursuant to 28 U.S.C. §§ 1331 and 1367.

**B.   Motion to Dismiss Standard**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps.  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than

conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).  A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").  "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its

face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

**C. Defendants' Motion to Dismiss**

Defendants make several arguments[2] in their Motion to Dismiss. First, Defendants argue that the NJLAD does not apply to the set of facts presented by this case because Plaintiff worked in Pennsylvania, not New Jersey. Second, Defendants argue that Plaintiff has failed to exhaust his ADEA claim. Third, Defendants argue that Plaintiff has failed to exhaust his Title VII claims. Fourth, Defendants argue Plaintiff cannot bring state or federal constitutional claims because Defendants are not state actors. Fifth, Defendants argue Plaintiff has failed to adequately allege a 42 U.S.C. § 1981 claim. Sixth, Defendants argue Plaintiff's New Jersey and Pennsylvania common law claims are statutorily preempted by NJLAD and the Pennsylvania Human Relations Act ("PHRA"). Seventh, Defendants argue Plaintiff has failed to adequately allege a breach of contract claim. Eighth, and finally, Defendants argue any claims dismissed against Defendant Schindler must also be dismissed against Individual Defendants. The Court will address each argument in turn.

---

[2] While this Court will address every argument made by Defendant, the Court notes it will not do so in the order presented by Defendant.

a. Whether NJLAD Applies

The threshold issue for the NJLAD claims is simply stated:
may Plaintiff seek relief under it or not.  The arguments of the
parties can also be stated quite simply: Defendants argue that
Plaintiff worked in Pennsylvania at the time of the alleged
discriminatory conduct while Plaintiff argues discriminatory
conduct was ongoing – stemming back pre-2011 – and occurred
mostly while he was in New Jersey, with the final termination
occurring only after he worked in Pennsylvania briefly.  But,
the facts are slightly more complicated than the parties
indicate.

It is best to start with the undisputed facts.  In 1989,
Plaintiff was hired by Defendant as an elevator mechanic.  He
was laid off, allegedly for lack of work, in 2011.  Thereafter,
Plaintiff filed a civil rights complaint.  Before the civil
rights complaint reached state or federal court, Defendant
rehired Plaintiff.  Plaintiff alleged that "Defendant settled
that claim."  (Pl.'s SAC ¶ 33.)  Both of these events occurred
at some point in 2012.  Plaintiff may have worked briefly in a
New Jersey casino, apparently for just a couple of weeks,[3] and

---

[3] The Court does note for the record that Plaintiff's SAC does
not contain a specific allegation about his brief tenure in a
New Jersey casino sometime in 2012.  Defendants rightly point
this out, but it appears the SAC makes an oblique reference.
(Pl.'s SAC ¶ 9 (". . . who was working briefly in New Jersey at
the onset of his discrimination claims against defendant.").)

then spent the next eighteen months in Philadelphia,
Pennsylvania working at a building at 1735 Market Street. On
May 29, 2014, Plaintiff was "told to report to [Defendant]'s
main office in Moorestown[,] New Jersey" and was terminated for
alleged "theft of a water jug." (Pl.'s SAC ¶ 17.)

There are also significant disputed facts, which complicate
the legal analysis here. The most important disputed facts
relate to the Release, purportedly signed in June 2012.
Defendants assert this was signed by Plaintiff in June 2012 and
that it means, for this case, that any allegations pre-2011 have
been waived and cannot be considered. The legal implications of
this fact is central to Defendants' argument, as presented.
Plaintiff asserts, through his opposition brief and in a
separate letter[4] to the Court, that he never signed the Release
and that he has waived no rights. Plaintiff also seems to
assert there were discovery violations and that, even if
Plaintiff had signed the release, it is of no legal
significance.

---

[4] Plaintiff's filing of letters in this manner is inappropriate.
Not only does Plaintiff's opposition brief not properly follow
the Local Civil Rules of Procedure in terms of spacing and font,
Plaintiff has also chosen to file a letter instead of a motion.
If Plaintiff wishes to file a sur-reply, Plaintiff should
consult the Local Rules and do as they instruct. If Plaintiff
wishes to file an objection or motion to strike, Plaintiff
should consult the Local and Federal Rules and do as they
instruct. However, for the sake of completeness, the Court will
consider these filings (and Defendants' responses).

Of course, the Court agrees, "[t]he law of the state of the employee's workplace applies to claims arising from his employment because the state has an 'unusually strong interest in applying its own law to employment contracts involving work in [its] state.'" Satz v. Taipina, No. 01-cv-5921 (JBS), 2003 U.S. Dist. LEXIS 27237, at *45 (D.N.J. Apr. 15, 2003), aff'd, 122 F. App'x 598 (3d Cir. 2005) (quoting Shamley v. I.T.T. Corp., 869 F.2d 167, 172 (2d Cir. 1989)) (emphasis added, second alteration in original). Neither the state of the employee's residence (here, New Jersey) or the state of the employer's headquarters (again, New Jersey) factors into the analysis. Id. at *46. Nor does it matter that the decision to terminate Plaintiff emanated from or was told to Plaintiff in New Jersey. See Albert v. DRS Techs., Inc., No. 10-3886, 2011 U.S. Dist. LEXIS 55320, at *5-6 (D.N.J. May 23, 2011) (holding that, even if the decision to terminate emanated from New Jersey, this alleged discriminatory conduct was not enough to allow application of NJLAD when the plaintiff did not work in New Jersey).

But, disregarding those facts which this Court finds legally irrelevant – Plaintiff's residence, Defendant Schindler's headquarters, and where the decision to terminate was made or occurred – the Court cannot dismiss the NJLAD claims. Reading Plaintiff's SAC in the light most favorable to

13

Plaintiff, the SAC does appear to allege Defendant's discriminatory conduct pre-dated 2011 and continued through Plaintiff's time in Pennsylvania. (Pl.'s SAC ¶¶ 9, 10, 12, 26, 31, 34, 38, 59.) Thus, whether that conduct should or should not be considered by the Court in determining the application of NJLAD could tip the scales in favor of either Plaintiff or Defendants.

The question of whether the pre-2011 conduct may be considered depends entirely – according to Defendants – upon whether the release was executed by Plaintiff and the legal ramifications of that execution. Plaintiff disputes that he ever signed the release and also presents argument as to why – even if he signed it – it should have no legal significance upon this case. This is a question of law where the facts matter, and those facts are disputed. While it may be improbable that Plaintiff did not sign the release, it is neither implausible nor impossible. Because that is the case, the Court finds, considering the current procedural posture of the case and the factual assertions of both parties in the SAC, briefs, letters, and attachments, it must deny Defendants' motion to dismiss on this point. However, if after appropriate discovery the undisputed facts support Defendants' argument that Plaintiff may only assert claims arising from his Philadelphia workplace

Defendants may move for summary judgment on Plaintiff's NJLAD claims.

b. Whether Plaintiff Failed to Exhaust the ADEA Claim

Defendants argue that Plaintiff's ADEA claim must be dismissed for failure to exhaust administrative remedies. Defendants specifically argues that Plaintiff cannot bring an ADEA claim in federal court without first filing a charge with the EEOC. Plaintiff admits that he "did not explicitly specify age discrimination in his 2014 claim" before the EEOC. (Pl.'s Opp'n Br. 14.) Plaintiff thereafter argues that

> [b]ecause defendant in this case continued to discriminate against the plaintiff and because a right-to-sue letter is not required, plaintiff is not required to refile an administrative complaint alleging age discrimination. Plaintiff has thus exhausted all administrative remedies with regard to the ADEA claim.

(Pl.'s Opp'n Br. 14.) In other words, Plaintiff presents two arguments: (1) because the actions are a continuing violation related to a previously filed administrative complaint there is no need to re-file and (2) a right-to-sue letter is not required by the ADEA to file a claim in federal court.

Defendants are correct and Plaintiff has not presented any argument to the contrary. Generally, a plaintiff asserting an ADEA claim "must file a charge with the EEOC within 180 days of the alleged employment action." Marina Wood v. Kaplan Props., No. 09-1941 (JLL), 2009 U.S. Dist. LEXIS 89834, at *7 (D.N.J.

15

Sept. 29, 2009) (citing 29 U.S.C. § 626(d)).  Because Plaintiff

brought the claims in New Jersey, that deadline is "extended to

300 days."  Id.; Hildebrand v. Allegheny Cty., 757 F.3d 99, 111

(3d Cir. 2014) (citing 29 U.S.C. §§ 626(d)(2) & 633(b); Watson

v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000)).  The

Third Circuit has termed this a "condition precedent to filing

suit under the ADEA."  Hildebrand, 757 F.3d at 111 (citing

Seredinski v. Clifton Precision Prods. Co., Div. of Litton Sys.,

Inc., 776 F.2d 56, 64 (3d Cir. 1985)).

    Plaintiff's first argument fails based on its own

reasoning.  While Plaintiff may not be required to refile if he

was asserting the same claim a second time, the Plaintiff is not

doing so in this case.  The Court notes Plaintiff would like the

Court to consider the previous actions of Defendants in

determining the merits of Plaintiff's instant claim.  Even if

the Court did so here, Plaintiff's claim is categorically

different.  Plaintiff is alleging a new adverse action under new

circumstances.  To allow Plaintiff to subvert the administrative

process in this way, which is statutorily prescribed by Congress

to encourage mediation and settlement in lieu of litigation,

would open an unintended loophole in the law.  The Court will

not do so here.

    Plaintiff's second argument is a red herring.  Whether

Plaintiff needs a right-to-sue letter is irrelevant, as

Plaintiff never specified an age discrimination claim in his administrative complaint, which is a requirement separate and apart from the right-to-sue letter.  Thus, the Court will dismiss Plaintiff's ADEA claim, with prejudice, for failure to exhaust administrative remedies.

      c. <u>Whether Plaintiff Failed to Exhaust the Title VII Claims</u>

Defendants argue the Title VII claims brought by Plaintiff must be dismissed for failure to exhaust administrative remedies – specifically a failure to receive a right-to-sue letter.[5] Plaintiff argues he may proceed absent a right-to-sue letter because, as long as he was entitled to it, it need not be in his possession before he files a complaint.  Essentially, Plaintiff argues he had the right to sue in state or federal court once the specified time period had elapsed from the time of the filing of his administrative complaint with the EEOC.

Plaintiff states he dual-filed a complaint with the NJDCR and the EEOC on July 15, 2014.  However, "[o]n March 23, 2015,

_____

[5] Defendant also argues that the May 23, 2018 Order of Magistrate Judge Williams already addressed this issue.  It did so in part. But, it did not address the exact issue now presented to the Court concerning the allegations made in the SAC because those issues were not before it.  Thus, while this Court is guided by that Order, it must decide issues not presented to Judge Williams.

251[6] days later, Plaintiff withdrew his complaint and requested a right-to-sue and was issued a Right-to-sue letter by the NJDCR. . . . The State informed him that it was all he needed. Plaintiff counsel also requested a right-to-sue from the EEOC . . . ." (Pl.'s Opp'n Br. 12.)  Regardless of what an individual at the NJDCR may have said to him, Plaintiff does not dispute that he withdrew his EEOC claims.  (Pl.'s Opp'n Br. 12.) Plaintiff also does not dispute that he has never received a right-to-sue letter.  (Pl.'s SAC ¶ 25 ("[Plaintiff] did not receive a notice of right to sue from EEOC.  He was told by the Director of NJDCR that it would not be forthcoming from the EEOC agency because the later [sic] did not investigate the claim.").)  Defendants argue the withdrawal of Plaintiff's claims before the EEOC means he will not receive a right-to-sue letter and therefore cannot, as a matter of law, bring a Title VII claim in federal court.

The case law is clear.  As explained in Schwinge v. Deptford Township Board of Education:

> A plaintiff must exhaust those remedies by obtaining a right-to-sue letter before she may file a complaint in court.  Ditzel v. Univ. of Med. & Dentistry, 962 F. Supp. 595, 602-03 (D.N.J. 1997) (citing 42 U.S.C. § 2000e-5). Thus, a claimant who voluntarily withdraws her administrative charge of discrimination before obtaining a right-to-sue letter fails to exhaust administrative

---

[6] Although of no legal significance here, the Court notes Plaintiff's SAC states it was 250, not 251 days.  (Pl.'s SAC ¶ 25.)

remedies and may not sue in court.  See Brundage v. Int'l
Ass'n of Bridge, Structural & Ornamental Ironworkers,
Local #401, No. 00-4549, 2007 U.S. Dist. LEXIS 81036, at
*33 (E.D. Pa. Oct. 24, 2007) . . . .

No. 09-5964 (RBK/JS), 2011 U.S. Dist. LEXIS 16610, at *14

(D.N.J. Feb. 17, 2011).  This is undoubtedly the case here, so

the Court must dismiss Plaintiff's Title VII claims in their

entirety.

While Plaintiff is correct that a litigant lacking a right-

to-sue letter who is otherwise entitled to one has exhausted

administrative remedies, Plaintiff has failed to show he was

entitled to a right-to-sue letter.  This narrow exception is

meant to allow litigants to proceed to federal court even when

the EEOC may be slow in completing its obligations.  As shown by

the case law above, one is not entitled to a right-to-sue letter

if one has withdrawn his claim before receiving a right-to-sue

letter.

Accordingly, this Court will dismiss all Title VII claims

to the extent they are asserted in Plaintiff's SAC, with

prejudice.  Specifically, the Court finds they have been

asserted in Count II.  As a result, this Court will not consider

Defendants' argument concerning whether those same claims are

adequately pled.  (Def.'s Mot. for Summ. J. 15-18.)

d. Whether Plaintiff Has Adequately Pled Federal and
   State Constitutional Claims

Defendants argue that Plaintiff's state and federal
constitutional claims, asserted in Counts I and V, must be
dismissed because Defendants are not state actors.  Defendants
argue that the law demands dismissal whether the claim is based
on federal, New Jersey, or Pennsylvania law.  Plaintiff provides
no argument in opposition to Defendants' assertion.

It appears in Count I that Plaintiff is claiming, in part,
a violation of the federal and New Jersey constitutional rights
for retaliatory and racial discrimination.  (Pl.'s SAC ¶ 28.)
Under what provisions of these constitutions Plaintiff claims
rights or alleges violations is unclear.  In Count V, it is
clear that Plaintiff is asserting Defendants have violated his
federal and state constitutional rights – here the states being
Pennsylvania and New Jersey - under an equal protection clause
theory.  (Pl.'s SAC ¶ 56.)

To the extent Plaintiff attempts under Counts I or V to
assert a federal, Pennsylvania, or New Jersey constitutional
claim, the Court must dismiss those claims.  Defendants are
correct that both New Jersey and federal law require a state
actor for such a claim.  Caldwell v. KFC Corp., 958 F. Supp.
962, 966 (D.N.J. 1997) (citing Robinson v. Cahill, 303 A.2d 273,
282 (N.J. 1973); State v. Schmid, 423 A.2d 615, 628 (N.J.

1980)).  Because Defendant Schindler is undeniably a private

company and Individual Defendants private actors, they cannot be

considered state actors under New Jersey or federal law.  Id.

Defendants also address Pennsylvania law in a footnote.  (Defs.'

Mot. for Summ. J. 19, n.9.)  To the extent Plaintiff also

asserts a Pennsylvania constitutional claim, it must be denied

for the same reason: there was no state actor here.  Maylie v.

Nat'l R.R. Passenger Corp., 601 A.2d 308, 313 (Pa. Super. Ct.

1991) ("The provisions of the Constitution do not reach the acts

of purely private actors.").  Accordingly, this Court will

dismiss all constitutional claims in Counts I and V requiring a

state actor, with prejudice.

> e. Whether Plaintiff Has Adequately Pled a Claim Under 42
>    U.S.C. § 1981

In Plaintiff's opposition, Plaintiff asserts he has

adequately alleged a § 1981 claim.  Defendants assert he has

not, stating that the SAC contains no § 1981 cause of action.

Of note, Defendants state Plaintiff attempted to assert a § 1981

cause of action in a proposed complaint that was rejected by

Judge Williams and that the complaint filed, the SAC, does not

contain that claim.  (Compare ECF Nos. 45 and 53.)  The Court

finds that Plaintiff has thus not asserted a § 1981 claim, as in

the rejected complaint he has a count specifically for § 1981

and in the SAC he does not.  The Court finds this even though

Plaintiff references "1981" at a few points in the SAC.  (See
Pl.'s SAC ¶¶ 9, 42.)  Those references appear to be a result of
poor editing rather than careful consideration.  In other words,
it does not appear that Plaintiff meant to assert a § 1981
claim.

But, that does not mean Plaintiff may not or cannot assert
one.  "When used as parallel bases for relief or companion
remedies, Title VII and 42 U.S.C. §§ 1981 and 1983 require the
same elements for their causes of action and courts incorporate
the same standards when assessing the employment discrimination
claims."  Behrens v. Rutgers Univ., No. 94-cv-358 (JBS), 1996
U.S. Dist. LEXIS 22311, at *13 (D.N.J. Mar. 29, 1996) (citing
Whiting v. Jackson State Univ., 616 F.2d 116, 121 (5th Cir.
1980); Boutros v. Canton Reg'l Transit Auth., 997 F.2d 198, 202
(6th Cir. 1993)).  And, as has long been the case, Title VII and
NJLAD are analyzed identically, or nearly so.  Id. (citations
omitted).  Thus, because the NJLAD claims have not been attacked
on their substance, a § 1981 could theoretically be asserted.

For that reason, this Court will grant Defendants' Motion
to Dismiss on these grounds, but notes Plaintiff may move for
leave to amend and add a § 1981 claim.

### f. Whether Plaintiff's New Jersey Common Law Claims Are Statutorily Preempted

Defendants argue Plaintiff's common law claims must be dismissed because they are statutorily preempted and are artificial causes of action[7]. According to Defendants, because the common law claims are based on the same facts and request the same relief as the state statutory causes of action, they are preempted. Plaintiff does not respond to this particular argument. Instead, Plaintiff argues he has stated a claim for negligent investigation because he has asserted a claim for hostile workplace. There are two claims, one for wrongful termination and the other for wrongful termination as a result of negligent investigation. Defendants address these claims jointly, first under New Jersey law and then under Pennsylvania law. The Court will do the same here.

Before it does so, the Court will examine the wrongful termination claims. The first wrongful termination claim, asserted in Count IV of the SAC, appears to be based upon discrimination. There, Plaintiff states that his "request for increased responsibility and benefits that were comparable to

---

[7] Defendants also allege that the negligent investigation claim is "an artificial cause of action." Under New Jersey law, the basis for dismissal is not that it is not a recognized cause of action, but that it is statutorily preempted. Thus, the Court will only address this particular argument to the extent it applies in Pennsylvania.

his level of seniority and in comparison, to his white coworkers was met with disapproval and retaliation." (Pl.'s SAC ¶ 53.) The Court construes these allegations as claiming wrongful termination either on the basis of race or by retaliation. Both of these bases are claimed in the SAC under the NJLAD.

The second wrongful termination claim, asserted in Count VII, appears to also be based upon discrimination. There, Plaintiff claims his termination was "based upon a 'false allegation.'" (Pl.'s SAC ¶ 72.) Although the allegations are not a model of clarity, Plaintiff is more detailed in briefing. There, Plaintiff states that his "wrongful termination in conjunction with the ongoing differential treatment are sufficient to meet the standard for a Hostile Workplace claim" when discussing whether he has "allege[d] sufficient facts to support a claim of negligent investigation and hence a claim of hostile workplace." (Pl.'s Opp'n Br. 24, 26.) Based on those statements, the Court finds Count VII is based upon a hostile workplace claim.

First, Defendants argue that both the wrongful termination claims must be dismissed because they are statutorily preempted by New Jersey law. The law in this District holds that no "supplementary common law cause[s] of action" is allowed "where the NJLAD provides a remedy for the wrong." Butler v. Sherman, 755 F. Supp. 1259, 1265 (D.N.J. 1990). On that basis, the court

in Butler dismissed a "common law claim of wrongful discharge on racial discrimination grounds." Id. at 1263-65.[8]

Second, Defendants argue that both the wrongful termination claims must be dismissed because they are statutorily preempted by Pennsylvania law.  Because the PHRA provides a statutory remedy for the wrongful termination claims brought by Plaintiff, the "common law action designed to redress the same injury is rendered superfluous."  Pacheco v. Kazi Foods of N.J., Inc., No. 03-cv-2186, 2004 U.S. Dist. LEXIS 11280, at *18 (D.N.J. Apr. 7, 2004) (quoting McGovern v. Jack D's, Inc., NO. 03-cv-5547, 2004 U.S. Dist. LEXIS 1985, at *22 (E.D. Pa. Feb. 3, 2004)).  See also Clay v. Advanced Comput. Applications, 559 A.2d 917, 918 (Pa. 1989) ("[T]he PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination.").  In that case, the Court dismissed a negligence claim on preemption grounds.  Id. at *16-18.

Moreover, it appears Defendants are also correct that – even if these claims were not preempted – Pennsylvania law does not recognize the wrongful discharge claims asserted by

---

[8] Additionally, under New Jersey law, an "action in negligence against an employer is barred by New Jersey Workers Compensation Act." Silvestre v. Bell Atl. Corp., 973 F. Supp. 475, 486 (D.N.J. 1997).  This presents an alternate basis under New Jersey law under which Plaintiff's common law claims here may be preempted.

Plaintiff.  Pennsylvania only permits wrongful discharge claims under the following circumstances:

> "An employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute."

Fraser v Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003) (quoting Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)) (alterations in original).  Plaintiff's wrongful termination claims do not fall within any of these three categories.

Accordingly, for the reasons stated supra, the Court will dismiss the New Jersey common law claims and the Pennsylvania common law claims, with prejudice.  Based on the Court's ruling supra concerning the NJLAD claims, it is improper at this time to allow those common law claims to proceed.  If the Court later determines NJLAD is inapplicable to this case, Plaintiff's common law claims would fall on the same basis in that Plaintiff's claims arise from alleged discrimination in Pennsylvania, presumably beyond the reach of New Jersey common law.

Alternatively, if the Court allows the NJLAD claims to proceed, any common law claims based on New Jersey law are pre-empted.  The Pennsylvania common law claims, on the other hand,

are clearly not recognized and thus do not state a cause of
action no matter whether the claims in this case arise under
Pennsylvania or New Jersey law.  In other words, regardless of
whether the PHRA is applicable, these claims are not cognizable.

   g. <u>Whether Plaintiff Has Adequately Pled a New Jersey
      Breach of Contract Claim</u>

     Defendants argue Plaintiff has failed to adequately allege
a breach of contract claim under New Jersey common law.
Defendants argue that the combination of the facts that (1)
Plaintiff was an at-will employee, (2) Plaintiff has failed to
point to a contract, and (3) that unfair discipline is legally
insufficient to state a breach of contract claim requires this
Court to dismiss it.  Plaintiff argues because he was a part of
a union, he had an express contract and that the employee manual
in concert with the implied covenant of good faith and fair
dealing are enough to constitute a breach of contract claim
here.

     Before addressing Defendants' argument, it is important to
describe what Plaintiff's SAC actually alleges.  Plaintiff's SAC
bases the breach of contract claim on Defendant Schindler's
"policies and/or its practices regarding the terms of his
employment and the implementation of those policies with respect
to him and his co-workers." (Pl.'s SAC ¶ 62.)  Nowhere in
Plaintiff's SAC – at least nowhere this Court can find – does

Plaintiff allege that he was a union employee with an express contract. Reading Plaintiff's SAC in a light most favorable to Plaintiff only allows this Court to find Plaintiff is basing his breach of contract claim upon the employee manual. Moreover, the only "contract" Plaintiff attaches to his brief are Defendant Schindler's employment policies. (Pl.'s Opp'n Br., Ex. E.) Thus, this Court will not consider whether there was an express union contract that was breached.

Plaintiff's breach of contract claim, as pled, fails. It appears Plaintiff's claim is that Defendant Schindler's policy created an implied contract which Defendant Schindler thereafter breached. This type of claim, an exception to the general presumption of at-will employment in New Jersey, was first recognized in Woolley v. Hoffmann-La Roche, 491 A.2d 1257 (N.J. 1985). But, the right is narrowly circumscribed. New Jersey's Supreme Court held that, only when there is no "clear and prominent disclaimer" that "an implied promise contained in an employment manual that an employee will be fired only for cause" is enforceable in a breach of contract action. Id. at 1258.

A necessary pre-requisite for a so-called Woolley claim is that a plaintiff has pointed to "'some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause.'" Bell v. KA Indus. Servs., LLC, 567 F. Supp. 2d 701, 710 (D.N.J. 2008) (quoting Doll v.

Port Auth. Trans-Hudson Corp., 92 F. Supp. 2d 416, 423 (D.N.J.
2000)).  Plaintiff has failed, in both the SAC and his briefing,
to point to any provision which requires good cause for
termination.  Moreover, the progressive discipline policy that
is the basis of Plaintiff's claim specifically states "[n]o
statement in this program is intended as a contractual
commitment or obligation of the Company to any individual
employee or group of employees." (Pl.'s Opp'n Br., Ex. E 95.)
Accordingly, this Court will dismiss Plaintiff's <u>Woolley</u> claim,
with prejudice.

> h. <u>Whether Plaintiff Has Adequately Pled Claims Against
> Individuals</u>

Finally, Defendants moves on two separate grounds to
dismiss claims, to the extent asserted, against the Individual
Defendants.  First, Defendants argue that to the extent this
Court dismisses claims against Defendant Schindler, the Court
should also dismiss claims against Individual Defendants.
Second, Defendants argue that Plaintiff has not alleged NJLAD
claims against Individual Defendants because Plaintiff has not
alleged a claim of aiding and abetting.  Plaintiff does not
offer any argument in opposition.

Because the grounds for dismissal of the claims against
Defendant Schindler are neither based on its legal status (a
corporation) nor on its actions, this Court will dismiss all

claims dismissed against Defendant Schindler on the same grounds and with the same affect against Individual Defendants.

The Court also finds that Plaintiff has not alleged an aiding and abetting claim against any of the Individual Defendants. The only mechanism available to a plaintiff to assert individual liability for a supervisor "for acts of discrimination or for creating or maintaining a hostile environment" is aiding and abetting. Cicchetti v. Morris Cty. Sheriff's Office, 947 A.2d 626, 645 (N.J. 2008) (citing N.J. STAT. ANN. 10:5-12(e)). But, not once in Plaintiff's SAC does he mention "aiding and abetting" nor does he mention Individual Defendants besides naming them as parties and stating they terminated him, falsely, for theft. (Pl.'s SAC ¶¶ 4-6, 17.) These allegations do not suffice to meet the three elements required of an aiding and abetting claim. See Cicchetti, 947 A.2d at 645 (requiring (1) a wrongful act which causes injury, (2) general awareness of role in illegal activity at the time of assistance, and (3) knowing and substantial assistance). Accordingly, the Court will dismiss this claim, without prejudice. Plaintiff may move for leave to amend at any appropriate time to add this claim.[9]

---

[9] The Court will not address Defendants argument concerning Federal Rule of Civil Procedure 15(c) as it appears all claims against Individual Defendants have been dismissed. At this time, this argument will be denied, without prejudice, as moot.

**D.  Defendants' Motion to Seal**

Defendants request this Court to permanently seal docket item 68-2, the Release.  Plaintiff has filed opposition, through multiple letters, essentially stating he will not consent to the sealing because he disputes the authenticity of the document. Plaintiff does not object to the sealing of this document except on those limited grounds.

Defendants have shown how its Motion to Seal satisfies Local Rule 5.3(c).  First, the document to be sealed is purportedly a confidential settlement agreement and release. Second, the alleged parties to the release, assuming its authenticity, both agreed to maintain its confidentiality. Thus, each party allegedly has a private contractual interest in its continued confidentiality.  Third, the serious injury that would result would allegedly be breach of the release by the parties.  Fourth, a less restrictive means – including redaction – is unavailable because, allegedly, the parties are contractually obligated to maintain the entire document in confidence.  Thus, Defendants have satisfied Local Rule 5.3(c).

Even so, Defendants satisfy Local Rule 5.3(c) only if the document is authentic.  Accordingly, while the Court awaits a possible determination of this document's authenticity, it will remain under seal.  To permanently seal it would attest to its authenticity just as unsealing it would attest to its

inauthenticity.  The Court is not able to rule on this issue at
this time.  Thus, the Court will maintain the document under
temporary seal.  If the Court later determines the document is
not genuine, Plaintiff may make an appropriate motion to unseal
it.  Similarly, Defendant may make a motion to permanently seal
it if the Court finds it genuine.  For those reasons, this Court
will grant Defendant's Motion to Seal, in part, and deny it, in
part.

**E.   Plaintiff's Request to Strike**

Plaintiff has also requested, in a document entitled
"Letter Memorandum in Opposition to Defendant's Introduction of
a Purported Waiver as Evidence" that this Court strike the
release from the record.  The basis for Plaintiff's Motion to
Strike is that the release is fraudulent.  Since discovery is
not yet complete on this issue and the parties have wholly
divergent views of the issue, the Court will not grant
Plaintiff's request to strike the release as Plaintiff's factual
basis is deficient.  The Court will deny Plaintiff's request,
without prejudice.  As with the Motion to Seal, if Plaintiff
hereafter acquires a sufficient basis it may re-file a Motion to
Strike at any appropriate time.

**F.   Plaintiff's Request for Leave to Amend**

Plaintiff has requested leave to amend.  While the Court
recognizes that leave to amend shall be freely given and that it

is particularly applicable to civil rights cases, the Court has dismissed most claims challenged with prejudice. Amendment of those claims would be futile. Some claims were dismissed without prejudice, but are contingent upon a possible future decision of the Court or Plaintiff's ability to properly plead them. Thus, at this time, the Court will deny Plaintiff's request for leave to amend, without prejudice. If Plaintiff determines that filing a motion for leave to amend is appropriate under the Local and Federal Rules, Plaintiff may do so at that time.

## CONCLUSION

For the foregoing reasons, the Court will grant, in part, and deny, in part, Defendant's Motion to Dismiss; will grant Defendant's Motion to Seal, in part and deny it, in part; will deny, without prejudice, Plaintiff's request to strike and for further leave to amend. Plaintiff may make a separate motion to strike or for leave to amend at any appropriate time and it will be considered in due course.

An appropriate Order will be entered.


Date: __May 2, 2019__                      __s/ Noel L. Hillman__
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.